**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

SCOTT E. SOUK,

          Plaintiff,

v.                                                    CIVIL ACTION NO.   2:14-cv-26442

CITY OF MOUNT HOPE, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are four Defendant motions: (1) Defendant City of Mount Hope's ("the City) Motion to Dismiss Complaint (ECF 8); (2) Defendant J.M. Kerr's ("Officer Kerr") Motion for Partial Joinder in the City's Motion to Dismiss Complaint (ECF 10); (3) the City's Motion to Dismiss Plaintiff's First Amended Complaint (ECF 26); and (4) Officer Kerr's Motion to Dismiss Plaintiff's First Amended Complaint (ECF 28).   For the reasons discussed herein, the motions directed against the original complaint, (ECF 8 & 10), are **DENIED** as **MOOT**, Officer Kerr's Motion to Dismiss the First Amended Complaint, (ECF 28), is **DENIED**, and the City's Motion to Dismiss the First Amended Complaint, (ECF 26), is **GRANTED**.

*I.*       *Background*

This is a case alleging common law torts and constitutional violations stemming from an incident at Plaintiff's place of business on August 9, 2013.   The claims are based on allegations that Officer Kerr performed an illegal search of Plaintiff's property and person and subsequently

made an unlawful arrest.   Accordingly, Plaintiff brings suit pursuant to 42 U.S.C. § 1983, alleging arbitrary and unreasonable state conduct in violation of the Constitution.   Plaintiff further brings state law claims of false arrest against Officer Kerr and negligent hiring and retention against the City.   (ECF 23.)

On August 8, 2014, Plaintiff filed the initial complaint in this civil action in the Circuit Court of Fayette County alleging false arrest, deprivation of constitutional rights, and vicarious liability against Officer Kerr and the City of Mount Hope.   (ECF 1, Exhibit A.)   Defendants noticed removal to federal court on October 2, 2014.   (ECF 1.)   On November 20, 2014, the City filed a Motion to Dismiss Complaint, (ECF 8), and Officer Kerr filed a Motion for Partial Joinder to the City's Motion and Memorandum in Support.   (ECF 10.)   On December 3, 2014, Plaintiff filed a motion for Leave to Amend Complaint and attached a Proposed Amended Complaint. (ECF 13.)   The Court granted that motion by Order entered February 3, 2014, (ECF 22), and Plaintiff's First Amended Complaint was filed the same day.   The First Amended Complaint withdrew the allegation of vicarious liability and includes one count, under 42 U.S.C. § 1983, of deprivation of constitutional rights against both Officer Kerr and the City, one count of false arrest against Officer Kerr, and one count of negligent hiring and retention against the City.   (ECF 23.) In his response to the motions to dismiss, Plaintiff withdrew the § 1983 claim against the City. (ECF 30.)   Both Defendants have filed motions to dismiss Plaintiff's First Amended Complaint. (ECF 26 & 28.)

Officer Kerr's motion seeks dismissal of each claim against him on two separate grounds. As to the false arrest claim, Officer Kerr argues (1) that the complaint fails, as a matter of law, to state a claim against him; and (2) that to the extent it states a claim, he is entitled to statutory

immunity under West Virginia Code § 29-12A-5(b).   With respect to the § 1983 claim, Officer

Kerr argues (1) that Plaintiff's claims are procedurally barred by operation of the *Heck v.*

*Humphrey* doctrine; or in the alternative (2) that Officer Kerr is entitled to qualified immunity

from the charges as described in the complaint.   (ECF 29.)   In its motion, the City initially stated

five bases for dismissal.   In light of Plaintiff's voluntary withdrawal of claims against the City

based on § 1983 or vicarious liability, only one ground remains pertinent: that Plaintiff's complaint

presented insufficient factual allegations to support a claim for negligent hiring and retention.

(ECF 26.)

## II. *The Operative Complaint*

As noted above, Plaintiff's First Amended Complaint was not filed until February 3, 2014.

Prior to that time, however, both Defendants had moved to dismiss Plaintiff's original complaint.

However, the effect of Plaintiff's First Amended Complaint, filed with leave of this Court by its

February 3 Order, (ECF 22), was to nullify that original complaint.   Generally, an amended

pleading supersedes the original pleading and renders it legally inoperative.   *Young v. City of Mt.*

*Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("As a general rule, 'an amended pleading ordinarily

supersedes the original and renders it of no legal effect.'" (citations omitted)); *see also* 6 Charles

Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1476 (2d ed.

1990) ("Once an amended pleading is interposed, the original pleading no longer performs any

function in the case and any subsequent motion made by an opposing party should be directed at

the amended pleading.").   Both Defendants in this case have since filed motions to dismiss the

amended complaint.   As such, this Court will treat the First Amended Complaint ("the

Complaint") as operative and **DENY AS MOOT** the City's first motion to dismiss the original

complaint, (ECF 8), and Officer Kerr's motion for partial joinder to the City's motion, (ECF 10).

### III. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) dictates the minimum pleading requirements for

civil complaints.   Under the Rule, a complaint must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."   Allegations "must be simple, concise, and

direct" and "no technical form is required."   Fed. R. Civ. P. 8(d)(1).

Fed. R. Civ. P. 12(b)(6) affords opposing parties the opportunity to test the legal sufficiency

of the complaint.   A motion to dismiss under that rule does not "resolve contests surrounding the

facts, the merits of a claim, or the applicability of defenses."   *Republican Party v. Martin*, 980

F.2d 943, 952 (4th Cir. 1992).   Rather, it serves the crucial role of "defining issues for trial and

for early disposition of inappropriate complaints."   *Francis* v. *Giacomelli*, 588 F.3d 186, 192 (4th

Cir. 2009) (citing 5 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure*, § 1202

(3d ed. 2004)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, 'to state a claim for relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).   This requires

the Court to utilize a two-pronged approach.   First, it must separate the legal conclusions in the

complaint from the factual allegations.   Second, assuming the truth of only the factual allegations,

the Court must determine whether the Plaintiff's complaint permits a plausible inference that "the

defendant is liable for the misconduct alleged."   *Id*.   The plausibility standard requires more than

factual allegations that are "merely consistent with" liability.   *Id*.   (quoting *Twombly*, 550 U.S. at

557).   Labels, conclusions, and a "formulaic recitation of the elements of a cause of action" will not do.  *Twombly*, 550 U.S. at 555.   What is required are well-pleaded factual allegations.   A motion to dismiss will be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."   *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

In civil rights cases against government officials, the "complaint can survive a motion to dismiss only if it . . . 'alleges the specific conduct violating the plaintiff's right, the time and the place of that conduct, and the identity of the 'responsible officials.'"   *Preast v. McGill*, 65 F.Supp.2d 395, 403 (S.D. W. Va. 1999) (quoting *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 666 (3d Cir. 1988)); *cf. Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (noting that *Iqbal* and *Twombly* "require more specificity from complainants in federal civil cases than was heretofore the case").

## IV. Discussion

### A.    Plaintiff's Allegations

On the night in question, Plaintiff was at The Smoke House, a tavern he owned in Mount Hope, West Virginia.   (ECF 23 ¶ 4.)   Plaintiff alleges that at 10:00 p.m., an officer of the Alcohol Beverage Commission ("ABC") arrived at The Smoke House, accompanied by Officer Kerr and "his wife, or significant other, name unknown . . . ."   (*Id*.)   At this time, the business was closed for the night and locked.   (*Id*.)   Plaintiff alleges that he unlocked his door to let the ABC officer in, and that "Defendant Kerr and his significant other followed the ABC officer into the

establishment." (*Id*. ¶ 5.)  The ABC officer proceeded to verify that the business' alcohol licensing was in order.  (*Id*. ¶ 6.)

At this point, Plaintiff alleges that "despite the absence of a warrant, probable cause, or exigent circumstances, the defendant officer demanded that Mr. Souk open the safe, which Officer Kerr proceeded to search without Mr. Souk's permission."  (*Id*.)  Plaintiff further alleges that Officer Kerr searched Mr. Souk's person.  (*Id*.)  Following the search, Officer Kerr arrested Plaintiff and charged him with two counts of possession with intent to deliver, one count of receiving and transferring stolen property, and one count of obstruction.  (*Id*. ¶ 7.)  Plaintiff alleges that Officer Kerr made this arrest "despite having no right or probable cause to enter Plaintiff's place of business or to search the same or to search Mr. Souk's person."  (*Id*.)  Plaintiff subsequently pled no contest to two misdemeanor charges to "avoid prosecution on felony charges."  (*Id*.)

## B.     42 U.S.C § 1983 Claim (Count II)

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Importantly, § 1983 is not itself the source of any substantive rights.  Rather, it provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  Officer Kerr moves to dismiss the § 1983 claim against him on several

grounds, including the *Heck v. Humphrey* doctrine and qualified immunity.   Fundamentally, he argues that "[p]ursuant to Rule 12(b)(6) and the <u>Twombly/Iqbal</u> standards, the Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted . . . ."   (ECF 29 at 3.)

### 1.  The Heck v. Humphrey Doctrine

As a threshold matter, Officer Kerr argues that Plaintiff is barred from bringing his § 1983 claim by application of the doctrine announced in *Heck v. Humphrey*, 512 U.S. 477 (1994). There, the Supreme Court addressed the intersection of habeas corpus and § 1983 and determined that claims challenging the "lawfulness of conviction or confinement" are not cognizable as § 1983 claims.  *Id*. at 483.   Specifically, the Court held that damages actions pursuant to § 1983 that "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement" are precluded unless the plaintiff in such action could demonstrate a favorable termination of the criminal proceedings against him.   *Id*. at 487 (defining "favorable termination" as proof "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus").

Our Circuit has imposed two requirements on the *Heck* doctrine's application.   First, a judgment in the plaintiff's favor must "necessarily imply the invalidity of [that plaintiff's] conviction or sentence."   *Covey v. Assessor of Ohio Cnty.*, 777 F.3d 186, 197 (4th Cir. 2015). Second, the claim must be brought by a claimant who is either "(i) currently in custody or (ii) no longer in custody because the sentence has been served, but nevertheless could have practicably sought habeas relief while in custody."   *Id*.   (quoting *Wilson v. Johnson*, 535 F.3d 262, 267–68 (4th Cir. 2008)).

These requirements obligate a court to closely scrutinize the nature of the conviction at issue in order to determine two things: (1) whether the nature of the claim *necessarily* implies the invalidity of the conviction at issue, and (2) if so, whether a plaintiff who is not currently in custody nevertheless had the practical opportunity to seek habeas relief while legally "confined."   *See Riddick v. Lott*, 202 F.App'x. 615, 616 (4th Cir. 2006) ("The *Heck* analysis requires a close factual examination of the underlying conviction.").   Where the pleadings fail to demonstrate these critical prerequisites to *Heck*'s application, the Fourth Circuit has counseled that the proper course is to avoid using its preclusive bar.   *Covey*, 777 F.3d at 198 (determining that the record before it was unclear as to whether the plaintiff could have practicably pursued habeas relief while confined and holding that as a result "*Heck* does not bar any of Mr. Covey's claims for purposes of the defendants' motions to dismiss.   We leave it to the district court on remand to decide at summary judgment whether *Heck* bars any of Mr. Covey's claims."); *Riddick*, 615 F.App'x. at 616–17 (vacating a district court's dismissal on *Heck* grounds on a "sparse" record because "[w]ithout knowing the factual basis for Riddick's [guilty] plea, we cannot determine whether his claim of police brutality would necessarily imply the invalidity of his earlier conviction for assaulting an officer while resisting arrest").

In the present case, the record is simply inadequate for this Court to ascertain whether Plaintiff's claims would be barred by *Heck*.   First of all, Plaintiff's constitutional claims founded upon illegal search and warrantless arrest are not of the type that always *necessarily* implicate the validity of a conviction.   *See Heck*, 512 U.S. at 487 n. 7 (recognizing that § 1983 suits alleging unreasonable searches would often not, "even if successful, necessarily imply that the Plaintiff's conviction was unlawful" because of the many rules of criminal procedure that allow for

8

convictions notwithstanding Fourth Amendment violations); *Brooks v. City of Winston-Salem*, 85 F.3d 178, 182 (4th Cir. 1996) ("[A] charge that probable cause for a warrantless arrest was lacking, and thus that the seizure was unconstitutional, would not necessarily implicate the validity of a subsequently obtained conviction—at least not in the usual case." (citations omitted)).   More is required before this Court could make that type of fact bound determination.   Moreover, even if Plaintiff's § 1983 claim would necessarily undermine his conviction if successful, the pleadings offer no details as to the nature of his conviction or confinement.   Just like the court in *Covey*, this Court is faced with a record from which it is impossible to tell whether it would have been practicable for Plaintiff to make a habeas challenge while confined.

Based on this record, this Court cannot make the determination that Plaintiff's § 1983 claim is barred by *Heck*.   Accordingly, it will proceed to consider whether the Complaint properly states a claim under § 1983.

## 2.   Qualified Immunity

Qualified immunity shields government officials performing discretionary functions from liability for civil damages "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."   *Tobey v. Jones*, 706 F.3d 379, 385 (4th Cir. 2013) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).   A qualified immunity defense can be presented in a Rule 12(b)(6) motion, but "when asserted at this early stage in the proceedings, 'the defense faces a formidable hurdle' and 'is usually not successful.'"   *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Field Day, LLC v. Cnty. Of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)).   When a defendant asserts the qualified immunity defense at this stage, the plaintiff's burden is to demonstrate that his § 1983

claim "satisfies the following two-prong test: '(1) the allegations underlying the claim, if true, substantiate a violation of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known.'" *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013) (quoting *Ridpath v. Bd. Of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006)).

Supreme Court precedent once required a district court first to decide the threshold question of whether or not there was a constitutional violation before turning to the second question of whether, if so, that violation was of clearly established law. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Pursuant to the more recent decision in *Pearson v. Callahan*, 555 U.S. 223 (2009), however, a district court has discretion to determine the order in which to address the two prongs of the qualified immunity inquiry. The present case alleges violations of fundamental and well-established constitutional principles. Accordingly, this Court recognizes, as the *Pearson* court did, that "the *Saucier* protocol is often beneficial," *id.* at 224, and follows that analysis by analyzing "one, whether a constitutional violation occurred, and two, whether the right violated was clearly established." *Tobey*, 706 F.3d at 385 (citations omitted). The first task, then, is to scrutinize the Complaint and determine whether any constitutional violation has been plausibly alleged.

The gravamen of Plaintiff's constitutional allegation is set forth in Paragraph 13 of Complaint, which states in full:

> Defendants conducted an illegal search of Scott Souk's person and place of business, and unlawfully, arrested, imprisoned and prosecuted the Plaintiff Scott Souk. Said actions were wholly arbitrary, unreasonable, and malicious thus constituting a violation of the Plaintiff's clearly established substantive and procedural due process rights protected by the Fourteenth Amendment, and deprived Plaintiff of his property without due process of law.

10

(ECF 23 ¶ 13.)   Plaintiff further alleges that Defendants' actions were "objectively unreasonable" and violated Plaintiff's rights "in violation of the Fourth and Fourteenth Amendments to the United States Constitution and their counterparts in the West Virginia Constitution."   (*Id.* ¶ 14.)[1]   As noted above, Plaintiff has withdrawn any constitutional allegations against the City of Mount Hope.   By its terms, Count II alleges "arbitrary and unreasonable state conduct pursuant to the Fourteenth Amendment."   (*Id.* ¶ 13.)

Regardless of the imprecise language chosen, Plaintiff essentially challenges the circumstances underlying his arrest and subsequent prosecution, matters at the core of the Fourth Amendment's protection.   The Supreme Court has noted that where "a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more general notion of 'substantive due process,' must be the guide for analyzing these claims.'"   *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).   Accordingly, Plaintiff's claim is appropriately analyzed under the specific provisions of the Fourth Amendment rather than the generalized language of substantive due process.   *See also Krein v. West Virginia State Police*, No. 2:11-CV-00962, 2012 WL 2470015, at * 6 (S.D. W. Va. June 27, 2012) (where Plaintiff's claim alleges substantive Fourth Amendment violations "the textually specific Fourth Amendment protection preempts the more generalized substantive due process protection").

To the extent Plaintiff invokes the Fourteenth Amendment's procedural due process provisions in addition, the Court notes that the "Fourth Amendment was tailored explicitly for the

---

[1] Plaintiff mentions the West Virginia Constitution here, but includes the reference within Count II of the complaint, which is explicitly brought under the authority of § 1983.   The Court does not construe Plaintiff's complaint to state an independent claim for relief under the West Virginia Constitution.

11

criminal justice system, and its balance between individual and public interest always has been thought to define the 'process that is due' for seizures of person or property in criminal cases, including the detention of suspects pending trial." *Taylor v. Waters*, 81 F.3d 429, 435-436 (4th Cir. 1996) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 125 n. 27 (1975)).   Thus, if Plaintiff's Complaint states a constitutional claim, it must be pursuant to the Fourth Amendment.

Here, Plaintiff's primary challenge is to the nature of his arrest.[2]   The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."   U.S. const. amend. iv.   "The basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by government officials."   *Camara v. Mun. Ct. of City and Cnty. of San Francisco*, 387 U.S. 523, 528 (1967).   Fundamentally, the Fourth Amendment imposes "a standard of reasonableness upon the exercise of discretion by government officials, including law enforcement agents . . . ." *Delaware v. Prouse*, 440 U.S. 648, 653–54 (1979).   An arrest is a form of seizure under the Fourth Amendment.   As such, it is only considered "reasonable" for purposes of the Fourth Amendment when justified by probable cause.   *See, e.g.*, *Wilson v. Kittoe*, 337 F.3d 392, 398 (4th Cir. 2003). While a warrant will generally provide evidence of such probable cause, a police officer's authority to make warrantless arrests based on probable cause is well-established.   *See Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001) ("[T]he standard of probable cause applies to all arrests . . . If an officer has probable cause to believe that an individual has committed even a very minor criminal

---

[2] Plaintiff also alleges that his prosecution was "unlawful."   (ECF 23 ¶ 13.)   However, the specific factual allegations in the complaint, reasonably construed, only challenge the search of Plaintiff's premises and the resulting arrest. Moreover, Fourth Amendment claims based on malicious prosecution require a showing that the charges against the Plaintiff were favorably terminated.   *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996). Plaintiff's own complaint admits that he "plead no contest to two misdemeanor charges," (ECF 23 ¶ 7), and thus fails to allege any favorable termination.   Accordingly, to the extent the complaint alleges constitutional violations based on unlawful prosecution, those allegations fail to state a claim under Fed. R. Civ. P. 12(b)(6).

offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." (citations omitted)).[3]

In order to state a claim under § 1983 for an unconstitutional warrantless arrest, a plaintiff must show that the arrest was made without probable cause. "Probable cause to justify an arrest arises when 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). The probable cause determination is inherently fact specific, but typically turns on two primary factors: (1) the suspect's conduct known to the officer, and (2) the contours of the offense thought to be committed by that conduct. *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001); *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). Where "no reasonable officer could believe, in light of the contours of the offense at issue, that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right . . . ensues." *Rogers*, 249 F.3d at 290 (citing *Smith v. Reddy*, 101 F.3d 351, 356 (4th Cir. 1996)). Probable cause "requires more than bare suspicion but requires less than evidence necessary to convict." *Porterfield*, 156 F.3d at 569.

The Complaint does not allege that Officer Kerr lacked probable cause to effectuate the arrest. Rather, it focuses on Officer Kerr's search of the plaintiff and his safe. Plaintiff alleges that after the ABC officer completed his inspection, Officer Kerr demanded that Plaintiff open his safe and that Officer Kerr proceeded to search the safe without Plaintiff's permission. (ECF 23 ¶

---

[3] *Atwater* addressed the constitutional dimension of warrantless arrests. In West Virginia, such warrantless arrests for even misdemeanors are authorized by statute. *See* W. Va. Code § 8-14-3 ("For an offense committed in his presence, any such officer may arrest the offender without a warrant and take him before the mayor or police court or municipal court to be dealt with according to law.").

6.)  Whatever he found in the safe led him to arrest the Plaintiff on multiple criminal counts. Viewing this allegation in the light most favorable to the Plaintiff, it supports the further allegation that Plaintiff's arrest was unlawful because based on a search lacking either a warrant, probable cause, or exigent circumstances.  (*Id*. ¶ 13.)  As it is well established that an arrest cannot be justified by the fruits of an illegal search, *Wong Sun v. United States*, 371 U.S. 471 (1963), the legality of the arrest must turn on the legality of the search.  As to this search, Plaintiff alleges that "despite the absence of a warrant, probable cause, or exigent circumstances, the defendant officer demanded that Mr. Souk open the safe, which Kerr proceeded to search without Mr. Souk's permission."  (*Id*. ¶ 6.)  The Court will now determine whether the factual allegations in the Complaint are sufficient to state a plausible claim that Officer Kerr violated the Fourth Amendment's proscription of unreasonable searches.

In addition to its general prohibition on unreasonable searches and seizures, the Fourth Amendment also provides that "no Warrants shall issue, but upon probable cause." U.S. const. amend. iv.  The Supreme Court has long read this text to impose a warrant requirement as the baseline for determining the reasonableness of government searches.  *See City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2452 (2015) (noting that "the Court has repeatedly held that searches conducted outside the judicial process, without prior approval by [a] judge or [a] magistrate [judge], are *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions" (citations omitted)); *Katz v. United States*, 389 U.S. 347, 357 (1967) ("Searches conducted without warrants have been held unlawful 'notwithstanding facts unquestionably showing probable cause . . . '" (quoting *Agnello v. United States*, 269 U.S. 20, 33

(1925))). This general requirement applies not only to the home, but to commercial buildings and premises as well. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 311 (1978).

The Supreme Court has noted, however, that an individual's expectation of privacy in such commercial premises, "is different from, and indeed less than, a similar expectation in an individual's home." *New York v. Burger*, 482 U.S. 691, 700 (1987) (citing *Donovan v. Dewey*, 452 U.S. 594, 598–99 (1981)). This reduced privacy expectation is especially acute in industries governed by pervasive regulations, and the Supreme Court has recognized that some "closely regulated" industries have been subject to "such a history of government oversight that no reasonable expectation of privacy . . . could exist for a proprietor over the stock of such an enterprise." *Marshall*, 436 U.S. at 313.

In such industries, defined by "the pervasiveness of and regularity of the federal regulation," *Dewey*, 452 U.S. at 606, regulatory inspections can be conducted without reference to traditional notions of either a warrant or probable cause. *See Burger*, 482 U.S. at 702 ("Because the owner or operator of commercial premises in a 'closely regulated' industry has a reduced expectation of privacy, the warrant and probable-cause requirements . . . have lessened application in this context."); *Ruttenberg v. Jones*, 283 F.App'x. 121,133 (4th Cir. 2008) ("It is well-settled that such regulatory inspections [in closely regulated industries] do not need to be accompanied by probable cause or a search warrant."); *LaSueur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012) ("While a state actor normally must procure a warrant before conducting a search, inspections in heavily regulated industries are permissible so long as certain conditions are met"). Liquor establishments are "prime examples" of this type of industry. *Turner v. Dammon*, 848 F.2d 440, 446 (4th Cir. 1988) (citing *Colonnade Catering Corp. v. United States*, 397 U.S. 72

(1970)).   Thus, in heavily regulated industries like the realm of alcohol retailers, government entities have more leeway to provide their own standards governing regulatory searches and inspections without offending the Constitution.

Accordingly, West Virginia regulates the sale of alcoholic beverages pursuant to Article 60 of the West Virginia Code.   The statute creates an Alcoholic Beverage Commission, provides for the appointment of a Commissioner, and vests the Commissioner and his dually authorized agents with significant control over the sale of alcoholic beverages in the state.   *See* W. Va. Code § 60-2-11.   The ABC is also vested with considerable authority over the licensing of private alcohol retailers, including the power to "enter the premises of any licensee at reasonable times for the purpose of inspecting the same, and determining the compliance of said license with the provisions of this article and any rules and regulations promulgated by the commissioner pursuant to the provisions of this article."   *Id*. at § 60-7-10(b*)*.[4]

It is not the case, however, that the Constitution imposes no limitations when Congress or state governments choose to regulate their industries through the use of warrantless inspections. Instead, a search pursuant to a regulatory inspection will violate the Fourth Amendment where it is authorized by a constitutionally infirm statute, where the inspection is used as a pretext for a purely criminal investigation, or where the execution of the search is unreasonable.   *See Burger*, 482 U.S. at 702–03 (establishing a three-prong test for challenging the constitutionality of statutes permitting government agents to conduct warrantless searches in heavily regulated industries); *LaSueur-Richmond Slate Corp.*, 666 F.3d at 269–70 (determining that, under the Fourth Amendment, "a party may challenge both the constitutionality of the Act permitting warrantless

---

[4] This provision presumably provided the basis for the inspection of Plaintiff's premises on the night in question, although that information is not clear from the pleadings.

searches as well as the conduct of government officials in a particular case"); *Ruttenberg*, 283 F.App'x. at 133 (gathering authority for the proposition that "an administrative search should be considered a pretext, and thus deemed impermissible, if the inspection was performed solely to gather evidence of criminal activity." (citations omitted)).

Even where searches are lawfully authorized, either by statute, a warrant, or an exception to the warrant requirement, it is still an elemental requirement of the Fourth Amendment that they be executed reasonably. *See Brigham City, UT v. Stuart*, 547 U.S. 398, 403; *United States v. Ramirez*, 523 U.S. 65, 71 (1998). When a search is authorized by an exception to the warrant requirement, "the scope of the warrantless search must be commensurate with the rationale that excepts the search from the warrant requirement." *Cupp v. Murphy*, 412 U.S. 291, 295 (1973) (citing *Chimel v. California*, 395 U.S. 752 (1969)). As indicated above, this principle applies with no less force in the context of inspections of closely regulated industries. *See Donovan*, 452 U.S. at 599 (recognizing that while the Fourth Amendment permits regulatory inspections of commercial property, that amendment "protects the interest of the owner of property in being free from *unreasonable* intrusions onto his property by agents of the government") (emphasis supplied); *Ruttenberg*, 283 F.App'x. at 136 (noting that "while officers must be afforded significant latitude in how they choose to execute a search, their conduct must likewise 'remain [] within the boundaries of reasonableness'" (quoting *Lawmaster v. Ward*, 125 F.3d 1341, 1349 (10th Cir. 1997))); *Bruce v. Beary*, 498 F.3d 1232, 1243 (11th Cir. 2007) (noting that "administrative searches are an exception to the Fourth Amendment's warrant requirement, but they are not an exception to the Fourth Amendment's requirement for reasonableness"). As with any search, "the

scope and execution of an administrative inspection must be reasonable in order to be constitutional." *Id.* at 1244.

In this context, Plaintiff has alleged sufficient facts to create a plausible claim that Officer Kerr's actions violated the Fourth Amendment.  Plaintiff's Complaint, albeit by the skin of its teeth, raises the specter that Officer Kerr's search and subsequent arrest violated the Constitution. West Virginia's statute allows ABC agents to enter a licensee's premises only "for the purpose" of inspecting that premises and determining compliance with state law.  W. Va. Code § 60-7-10(b).[5]  Even if Officer Kerr had a right, as part of an ABC inspection, to enter Plaintiff's business in the first place, the mere fact that an officer is entitled to enter a premises to determine compliance with licensing regulations does not afford that officer carte blanche to conduct searches within that premises. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 19–20 (1968) (describing Fourth Amendment inquiry into reasonableness as dual one, encompassing not only whether an officer's action was justified at its inception, but also "whether it was reasonably related in scope to the circumstances which justified the interference in the first place").

Plaintiff alleges that Officer Kerr searched plaintiff's safe after the ABC agent had verified that the business' licensing was in order.   (ECF 23 ¶ 6.)   This suggests that the search of the safe was not a part of the ABC inspection and amounts to an allegation that Officer Kerr unreasonably exceeded the scope of that inspection by engaging in investigative conduct for a purpose other than

---

[5] Compare the limited scope of W. Va. Code § 60-7-10(b) to similar language in the Virginia statutory provision regulating alcoholic beverages, which provides that the state Alcoholic Beverage Control board and its special agents "shall be allowed free access during reasonable hours to *every place* in the Commonwealth where alcoholic beverages are manufactured, bottled, stored, offered for sale or sold, for the purpose of examining and inspecting such place." 3 Va. Admin. Code 5-50-70(b) (emphasis added).   In *Ruttenberg*, the Fourth Circuit interpreted this language to cast a "wide net" and authorize state ABC agents to enter and search the private office of Plaintiff alcohol licensee.   283 F.App'x. at 134–35.   The Court has been unable to find any interpretation of W. Va. Code § 60-7-10(b) that casts a similarly wide net.

verifying Plaintiff's alcohol license.   Plaintiff further alleges that the search was unreasonable and not otherwise justified by either a warrant, probable cause, exigent circumstances, or consent. (*Id.*) Taking Plaintiffs factual allegations as true, and viewing them in the light most favorable to the Plaintiff, the Complaint leaves no basis on which Officer Kerr could justify his search.   It was done on Plaintiff's property unreasonably and without consent, without a warrant, without probable cause, and without an exigent circumstance.   Further, even within the heavily regulated industry within which Plaintiff operates, the search was plausibly invalid because it exceeded the proper scope of an ABC warrantless inspection.   Because the Complaint alleges that the ultimate arrest was a direct result of the fruits of this invalid search, Plaintiff has plausibly alleged that the warrantless arrest lacked a valid basis as well.   Plaintiff's Complaint thus sufficiently alleges a violation of his fundamental Fourth Amendment rights.

The next issue for the Court, then, is to determine whether the alleged constitutional violation was of a right that "was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right."   *Bailey v. Kennedy*, 349 F.3d 731, 739 (4th Cir. 2003).   This determination can be broken down into two constituent inquiries. The first is whether the specific right alleged to be violated was clearly established at the time of the alleged violation, a question of law for the court.   *See, e.g., Wilson v. Kittoe*, 229 F.Supp.2d 520, 526 (W.D. Va. 2002) (citing *Henderson v. Simms*, 223 F.3d 267, 271 (4th Cir. 2000).   The second is whether a reasonable person in the officer's position would have known that his conduct violated that right.   *Id.*   These two questions often blend together, however, and the key is that context always matters.   Law can only be clearly established to the extent it gives notice to a reasonable officer in a given situation about what conduct is proscribed.   *See Saucier*, 533 U.S. at

19

202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").

To be clearly established, "a right must be sufficiently clear 'that every reasonable officer would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2078 (2011). Thus, "in the light of pre-existing law the unlawfulness must be apparent. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). However, it need not be the case that "the very action in question" have been previously "held unlawful." *Id*. The clearly established requirement is a notice-giving provision designed to make sure government officials have fair warning that their conduct violates the Constitution before they are held civilly liable for that conduct. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). *See also Rogers v. Pendleton*, 249 F.3d 279, 286 (4th Cir. 2001) (qualified immunity provides protection to officers who take action "that is not clearly forbidden" in "gray areas, where the law is unsettled or murky . . .").

While the issue of whether a right allegedly violated was "clearly established" at the appropriate level of inquiry is a matter of law for the court, the subsequent questions of "[w]hether the conduct allegedly violative of the right actually occurred, or, if so, whether a reasonable officer would have known that that conduct would violate the right, however, may or may not be then subject to determination as a matter of law." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992). It is generally true that, when it comes to resolving the qualified immunity issue, earlier

20

is often better.  *See*, e.g.*, id.* ("Because qualified immunity is designed to shield officers not only

from liability but from the burdens of litigation, its establishment at the pleading or summary

judgment stage has been specifically encouraged." (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 816

(1982))).   However, the Court also recognizes that some factual development is often needed to

assess qualified immunity claims involving reasonableness, *Tobey*, 706 F.3d at 389, and that

"qualified immunity is peculiarly well-suited for resolution at the summary judgment stage." *Raub*

*v. Bowen*, 960 F.Supp.2d 602, 608 n. 8 (E.D. Va. 2013) (citing *Willingham v. Crooke*, 412 F.3d

553, 558–59 (4th Cir. 2005)).

    With these standards in mind, the Court cannot determine that Officer Kerr is entitled to

qualified immunity for two interrelated reasons.   First, as currently pled, the Complaint alleges

violations of well-established principles of Fourth Amendment law.   As the discussion above

relating to whether Plaintiff has adequately pled a constitutional violation indicates, some of the

area of the law involved is nuanced.   However, the current record is inadequate for the Court to

appropriately scrutinize Officer Kerr's actions on the night in question and determine whether it

transgressed "bright lines" of which a reasonable officer should have been aware.  *Maciariello*,

973 F.3d at 298.   This is the second consideration leading to the Court's denial of qualified

immunity.

    As pled in the Complaint, the constitutional rights involved are clearly established.

Plaintiff alleges, essentially, that he was arrested on the basis of an unconstitutional search and

that the search was of a container on Plaintiff's business property without any legal justification.

These allegations assert deprivations of core Fourth Amendment rights.   First, it is elementary

that a warrantless arrest is only reasonable for purposes of the Fourth Amendment when based on

probable cause.  *See,* e.g*., United States v. Watson*, 423 U.S. 411, 417–24 (1976).   It is similarly well-established that evidence seized pursuant to an unconstitutional search cannot form the basis for valid probable cause.  *See Alderman v. United States*, 394 U.S. 165 (1963); *Wong Sun v. United States*, 371 U.S. 471 (1963); *Henry v. United States*, 361 U.S. 98 (1959).

Generally, a search of business property would require a warrant or exigent circumstances. However, this case is somewhat complicated by fact that Plaintiff operated a bar where liquor was sold, thus qualifying it as a "closely regulated industry" and altering the Fourth Amendment search analysis.   However, the law governing the scope of searches conducted as an exception to the warrant requirement is clear: in order to comply with the Fourth Amendment's mandate of reasonableness, they must not exceed the scope of the exception to the warrant requirement pursuant to which they are justified.  *See Cupp v. Murphy*, 412 U.S. 291, 295 (1973); 412 U.S. at 295; *Donovan*, 452 U.S. 594, 599 (1981).   While there are certainly complexities involved in determining the proper scope of a warrantless regulatory inspection, the pleadings simply do not provide a sufficient basis for the Court to determine "whether the vagaries of existing precedent left the officer[] without 'clearly established' precedent to guide [him] in the particular circumstances that [he] faced."   *Raub*, 960 F.Supp.2d at 609.   For now, Plaintiff's allegations that Officer Kerr conducted the search in question after the ABC inspection was complete, that he searched a closed safe, that the search was unreasonable, and that the search was not otherwise authorized by a warrant, probable cause, exigent circumstances, or consent are sufficient to allege a violation of clearly established law.   Plaintiff's Complaint successfully rules out all justifications for Officer Kerr's search, leaving only an accusation that he conducted an illegal search and arrested Plaintiff on that basis.

In support of his qualified immunity defense, Officer Kerr argues that his search of Plaintiff's safe was justified by the Supreme Court decisions in *Terry v. Ohio*, 392 U.S. 1 (1968) and *Michigan v. Long*, 463 U.S. 1032 (1983), which allow officers to conduct protective searches on less than probable cause when they have reasonable suspicion to believe that an individual is armed and dangerous. *See,* e.g., *United States v. Holmes*, 376 F.3d 270, 275–76 (4th Cir. 2004). The Supreme Court authorized *Terry* stops with criminal investigation and officer safety in mind. As such, that Court has repeatedly emphasized that "the warrantless search authorized by *Terry* must be limited in scope to an intrusion that is reasonably designed to discover hidden weapons that might be used to harm the officer." *United States v. Goodman*, 14 F.3d 597 (4th Cir. 1993). Typically, this kind of search will be limited to a suspect's person, in the form of "patting down the outer surfaces of the suspect's clothing." *Id.* In the specific context of automobile traffic stops, however, the *Terry* rationale has been extended to allow for "'frisks' of automobile interiors" in recognition of the reality that "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers . . . ." *United States v. Stanfield*, 109 F.3d 976, 978, 981 (4th Cir. 1997) (quoting *Michigan v. Long*, 463 U.S. 1032, 1046 (1983)).

   To determine the validity of a *Terry* stop's validity, a court must look to "the totality of the circumstances in determining whether the requisite reasonable suspicion existed." *United States v. McCoy*, 513 F.3d 405, 411 (4th Cir. 2008). In order to justify a *Terry* stop, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21.

At the current stage of the present litigation, *Terry* cannot provide a basis for awarding qualified immunity. The Complaint does not provide any information suggesting that the plaintiff

was dangerous or that Officer Kerr had reason to believe he was.   There is no automobile involved.   Plaintiff's Complaint does not facially implicate *Terry*, which allows limited searches of a suspect's person or (in some cases) vehicle for weapons, or indicate any special circumstances justifying its extension to a safe like the one at issue here.   Officer Kerr asserts that the circumstances of the ABC inspection made the search "for safety and security purposes" reasonable.   As has been discussed above, however, Officer Kerr's lawful presence on Plaintiff's property did not confer authority to make general investigative searches of that premises.   Thus, if Officer Kerr exceeded the scope of the inspection by searching an unrelated safe after the compliance inspection was completed, his initial lawful presence on Plaintiff's property cannot make that search reasonable.   Even where *Terry* applies, it is limited in scope and requires reasonable suspicion.   There is simply nothing in the Complaint suggesting the existence of such reasonable suspicion and nothing in the record that would allow this Court to conclude, as a matter of law, that Officer Kerr had either any concern for officer safety or reasonable suspicion, extending to Plaintiff's safe, that would justify a protective search for weapons.

Based on the foregoing analysis, the record is insufficient at this stage for the Court fully to assess the reasonableness of Officer Kerr's actions.   There is no indication as to the nature of the inspection involved, that inspection's scope, Officer Kerr's basis for searching the safe, or other indicators of the reasonableness of his actions in light of the established law in this area. This is a case that requires further factual development before a definitive ruling on qualified immunity can be made.   This Court recognizes that qualified immunity should be addressed at the earliest possible stage, *Pearson*, 555 U.S. 232.   However, it remains the case that the policy in favor of early resolution of qualified immunity is not meant to alter the substantive standards

24

governing pre-trial motions.  *See Pritchett*, 973 F.2d at 307 (noting that summary judgment doctrine is not "to be skewed from its ordinary operation to give special substantive favor to the defense . . ."); *Crawford-El v. Britton*, 523 U.S. at 594–95 (1998) (rejecting a heightened pleading standard where qualified immunity is asserted).

Summary judgment may very well yield a different answer, but at this stage Plaintiff has managed to plead sufficient facts to surmount Officer Kerr's qualified immunity defense. Accordingly, the Court **DENIES** Defendant Kerr's Motion to Dismiss as to Count II of the Complaint.

## C.    State Law Claims

Plaintiff alleges state law claims against both Officer Kerr and the City.   Against Officer Kerr, the plaintiff charges false arrest because the officer "knew that a warrant was required in order to search Plaintiff's person and place of business and that his arrest of the plaintiff based upon the illegal search was illegal, unconstitutional, in violation of the law and constitutes false arrest."  (ECF 23 ¶ 10.)   Against the City, Plaintiff alleges negligent hiring and retention of Officer Kerr.   Both Defendants assert that the Complaint lacks sufficient factual allegations to state a claim.   In addition, Officer Kerr claims statutory immunity pursuant to West Virginia Code § 29-12A-5(b).   As with the constitutional claims, the Court will first determine whether the Plaintiff has indeed stated a viable claim before reaching the immunity issue at the 12(b)(6) stage.

### 1.  False Arrest (Count I)

Plaintiff alleges that his arrest was unlawful because Officer Kerr "knew that a warrant was required in order to search Plaintiff's person and place of business and that his arrest of the plaintiff based upon the illegal search was illegal, unconstitutional, in violation of the law and constitutes

false arrest." (ECF 23 ¶ 10.)   Plaintiff is not clear about the source of law upon which this claim is based.   On the one hand, the Complaint alleges that his arrest was improper because based on an "unconstitutional search."   However, Plaintiff appears to confine his constitutional allegations to Count II of the Complaint, which alleges that the same conduct underlying the false arrest claim of Count I violates the Constitution and is the proper basis for a § 1983 claim.   Further, in their briefing, Defendants appear to treat this claim as being based on state law.   Officer Kerr cites West Virginia case law on false arrest to support his assertion that the claim fails as a matter of law, (ECF 29 at 5-6), and resorts to the West Virginia statutory immunity provision to seek shelter from Plaintiff's "state law claims."   (*Id*. at 6.)   This reference to state law claims must reference the false arrest claim because the only other claim brought against Officer Kerr is the constitutional claim pursuant to § 1983.   Accordingly, this Court will treat the allegation as a claim for false arrest under West Virginia law.[6]

West Virginia has traditionally recognized the tort of false arrest.   Although alternatively named as false imprisonment and unlawful detention, the "gist" of the action is "the illegal detention of a person without lawful process or by an unlawful execution of such process." *Vorholt v. Vorholt*, 160 S.E. 916, 917 (W. Va. 1931); *see also Woods v. Town of Danville, W. Va.*, 712 F.Supp.2d 502, 511–12 (S.D. W. Va. 2010) ("[T]he tort of false arrest/imprisonment, also known as unlawful detention, requires 'the detention of a person' and 'the unlawfulness of the detention and restraint.'" (quoting *Riffe v. Armstrong*, 477 S.E.2d 535, 552 (W. Va. 1996))).

---

[6] The Court notes that Plaintiff is a represented party and not entitled, as a pro se litigant is, to have his pleadings liberally construed. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).   Count I can reasonably be construed as alleging a state law claim, especially pursuant to the operative standard in a 12(b)(6) motion, but the Court cautions counsel to be more precise in the future.

The law governing warrantless arrests in West Virginia closely mirrors federal law on the topic, outlined above.   An officer may, "without a warrant, arrest any person who he, Upon [sic] reasonable grounds, believes has committed a felony . . . ."   *State v. Duvernoy*, 195 S.E.2d 631, 635 (W. Va. 1973) (quoting Syl. Pt. 3, *State for the use of Brown v. Spangler*,197 S.E. 360 (W. Va. 1938)).   The standard for making such warrantless arrest is probable cause.   "Probable cause to make an arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officers are sufficient to warrant a prudent man in believing that an offense has been committed or is being committed."   *Id.* (quoting Syl. Pt. 1, *State v. Plantz*, 180 S.E.2d 614 (W. Va. 1971)).   Further, as is the case with federal law, West Virginia law recognizes that the fruits of an illegal search cannot form the valid probable cause for an arrest. Syl. Pt. 10, *State v. Thomas*, 203 S.E. 2d 445 (W. Va. 1974) ("An arrest cannot be justified by the fruits of an illegal search nor can a search be justified by what it produces.").

As with the constitutional claim, Plaintiff does not explicitly allege that his arrest was effectuated without probable cause.   Rather, he alleges that the arrest was based on an illegal search, and was thus illegal in itself.   As has been described in the previous section, the Complaint properly alleges that Plaintiff's arrest was founded upon an unconstitutional search, and thus that it was "illegal, unconstitutional, in violation of the law and constitutes false arrest." (ECF 23 ¶ 10.) The pleadings suggest that Officer Kerr based his arrest of the plaintiff on an illegal search, conducted after the conclusion of a regulatory inspection, and unsupported by a warrant, probable cause, exigent circumstances, or consent.   Thus, the Complaint states a claim for false arrest.

Officer Kerr asserts that even if Plaintiff's Complaint is sufficient to state a claim against him, he is still entitled to immunity from the state law claim under West Virginia Code § 29-12A-

27

5(b).   That provision of the West Virginia Governmental Tort Claims and Insurance Reform Act states that:

> (b) An employee of a political subdivision is immune from liability unless one of the following applies:
> (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
> (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
> (3) Liability is expressly imposed upon the employee by a provision of this code.

W. Va. Code § 29-12A-5(b).

Construing the Complaint in the light most favorable to the plaintiff, the Court is able to infer sufficient allegations of bad faith conduct to allow it to survive Officer Kerr's motion.   As described above, Plaintiff does not only claim that Officer Kerr made a false arrest in violation of state law.   He further alleges that Officer Kerr violated clearly established constitutional rights when he conducted an unreasonable and unjustified search of Plaintiff's safe and proceeded to arrest Plaintiff on that basis.   Moreover, Plaintiff alleges that Defendant's actions, at least with respect to the constitutional violations, were "wholly arbitrary, unreasonable, and malicious . . . ." (ECF 23 ¶ 13.)   Plaintiff's constitutional and state law claims are based on the exact same conduct, and so these allegations apply with equal force to Officer Kerr's state law violation.   Taken as true, the Complaint supports the conclusion that Officer Kerr's conduct, in violation of law of which a reasonable officer would have been aware, was done in bad faith.   As such, at this stage of the litigation, he is not entitled to the statutory immunity provided by § 29-12A-5(b).

Accordingly, the Court **DENIES** Officer Kerr's Motion to Dismiss as to Count I of the Amended Complaint.

### 2.  Negligent Hiring and Retention (Count III)

28

West Virginia recognizes a cause of action based upon negligent hiring and retention.   *See McCormick v. W. Va. Dep't of Public Safety*, 503 S.E.2d 502, 506–07 (W. Va. 1998); *State ex rel. W. Va. State Police v. Taylor*, 499 S.E.2d 283, 289 n. 7 (W. Va. 1997).   Claims against employers for negligent hiring differ from vicarious liability theories because "there is no requirement that employee's tortious conduct be within the scope of his or her employment in order for the employer to be held liable."   *Evans v. Sanchez Rubio*, No. CIV A 206-0995, 2007 WL 712291, at * 2 (S.D. W. Va. Mar. 6, 2007).   Perhaps based upon this distinction, West Virginia's municipal liability statute "does not contemplate immunity where a plaintiff sues based on negligent hiring and supervision of an employee."   *Woods v. Town of Danville, W. Va.*, 712 F.Supp.2d 502, 514 (S.D. W. Va. 2010); *see also West Virginia Reg'l Jail and Corr. Facility Auth. v. A.B.,* 766 S.E.2d 751, 773 (W. Va. 2014) (finding that West Virginia law does not recognize negligent hiring as a per se viable cause of action against the State or its agencies, but noting no such limitation for negligent hiring claims against political subdivisions).

To prove negligence under West Virginia law, a plaintiff must prove "that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately caused the injuries of the plaintiff."   *Strahin v. Cleavenger*, 603 S.E.2d 197, 205 (W. Va. 2004).   A negligent hiring and retention claim focuses on the reasonableness of an employer's risk assessment of a given employee. The test in West Virginia asks the following:

> When the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

*McCormick*, 503 S.E.2d at 506 (citing *Taylor*, 499 S.E.2d at 289 n.7).

To answer these questions, courts look primarily to the nature of the employee's job assignment, duties and responsibilities. *Id*. at 507. Where these duties and responsibilities involve increasing risks to third parties, the employer's duty at the hiring stage correspondingly heightens. *Id*. In particular, this Court has found that the employer's duty is especially heightened when hiring a police officer, based on the acute risks associated with an officer's ability to carry a firearm and interact with citizens. *See Woods*, 712 F.Supp.2d at 514 ("Police officers are, among other things, permitted to carry guns, use necessary force to effect arrest, and enter civilian residences in certain circumstances.").

In support of his negligent hiring and retention claim, Plaintiff cites three examples of "civil rights suits" against Officer Kerr in his capacity "as a police officer." (ECF 23 ¶ 17.) Plaintiff further alleges that "upon information and belief," the City failed to adequately research Officer Kerr's background before making the decision to hire him or require him to participate in any civil rights training program designed to "protect the public from malfeasance by Kerr." (*Id*.)

With respect to this claim, Plaintiff has not pled sufficient factual details to give plausible rise to liability on the part of the City. Although the Complaint alleges that the City failed to adequately research Officer Kerr's background before hiring him, it avers no specific allegations that would tend to support that conclusion. Crucially, it does not allege any specific factual details about Officer Kerr that would allow this Court to infer that a reasonable investigation into his background would have revealed dangerous proclivities and a potential risk of injury to third parties. *See Krein v. West Virginia State Police*, No. 2:11-CV-00962, 2012 WL 2470015, at *8 (S.D. W. Va. June 27, 2012) (allegations of "particularly" egregious use of excessive force justify

30

inference that reasonable investigation would have revealed risk of injury to third party); *Poe v. Town of Gilbert, W. Va.*, No 2:11-CV-00645, 2012 WL 3853200, at * 10 (S.D. W. Va. Sept. 5, 2012) (in a complaint involving excessive force claims against individual officers, allegations that police officers had history of violence and had received complaints specifically related to excessive force in the past was enough to "barely" state a claim for negligent hiring and retention against the town).

Here, Plaintiff does not make such allegations.   Although he alleges violations of clearly established constitutional rights, he does not allege that they were "particularly egregious," as in *Krein*.   Moreover, there are no allegations that Officer Kerr had a history that would suggest a proclivity to harm or injure third parties with whom he would come into contact on the job.   In fact, the Complaint makes no allegations that Officer Kerr was in any way unfit for the job other than its mention of "civil rights" suits against Officer Kerr.   These allegations fall short of the mark.   The Complaint does not attach those lawsuits as exhibits or otherwise indicate their resolution or whether Officer Kerr ever admitted liability or was adjudicated liable.   Moreover, it does not describe the nature of those suits and whether they implicate officer conduct that is in any way related to the present charges against Officer Kerr.   Unlike the situation in *Poe*, where the plaintiff in an excessive force case alleged both a history of violence and prior instances of excessive force complaints against the officers in question, the plaintiff here has failed to draw any nexus between prior civil rights complaints and the officer action relevant to the current case.

This Court cannot allow to proceed claims against the City for negligence based solely on accusations that the officer in question was previously the subject of civil rights suits of an undescribed nature and resolution.   There is simply nothing on the face of the Complaint, even

viewed in the light most favorable to Plaintiff, that would indicate that a reasonable investigation into Officer Kerr would have revealed any risk of harm or injury to third parties.

Accordingly, this Court **GRANTS** Defendant City of Mount Hope's Motion to Dismiss Count III of the First Amended Complaint.

### *V. Conclusion*

For the reasons discussed above, the Court **DENIES AS MOOT** the motions against the original complaint, (ECF 8 & 10), **DENIES** Defendant Kerr's Motion to Dismiss Counts I and II of the First Amended Complaint, (ECF 28), and **GRANTS** Defendant City of Mount Hope's Motion to Dismiss as to Count III of the First Amended Complaint, (ECF 26).

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 28, 2015

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE